VERA A. RIDDICK, APPELLEE, V. JULIAN W. RIDDICK, APPELLANT.

FILED DECEMBER 29, 1924.  No. 22929.

Divorce:  CONDONATION.  "Condonation of acts of cruelty by the husband against the wife is conditional upon subsequent good conduct. and cannot constitute a defense in an action for divorce if the husband is guilty of cruelty after the alleged condonation." McNamara v. McNamara, 93 Neb. 190.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. Affirmed.

Wilmer B. Comstock, for appellant.

Jacob Fawcett, contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, GOOD and THOMPSON, JJ.

GOOD, J.

Plaintiff sued her husband for a divorce and, among other grounds for relief, alleged that the defendant had been guilty of extreme cruelty. particularly in that he had falsely charged her with infidelity to the marriage vows. She also asked the custody of the minor child of the parties, a little girl two years of age. The defendant denied all of the charges against him, save and except those re-

lating to the charges of infidelity, and alleged that the only charges made by him were based upon plaintiff's admissions of intimate relations with other men. The trial resulted in a decree for plaintiff, and she was awarded the custody of the minor child. Defendant appeals.

The parties were married March 6, 1918, and shortly after the marriage he reenlisted in the United States Marine Corps, and in due time was sent to France, where he was wounded and " gassed " while in the service of his country. While he was overseas plaintiff remained with her parents at Lyons, Nebraska. Upon his return to America in the spring of 1919, he came to Nebraska, to the home of his wife's parents. She was then visiting at the home of a girl friend, in Randolph, Nebraska. Upon information that her husband had returned, she immediately rejoined him at her father's home in Lyons. Very shortly thereafter he accused her of undue intimacy with the father of the girl whom plaintiff had been visiting, and also with another gentleman, who was the family physician of plaintiff's parents. Both of these men were from 50 to 60 years of age, while plaintiff was but 19 years old. The parties, however, continued to live together for some time, and in the fall of 1919 moved to Lincoln, where defendant entered the state university, taking vocational training provided by the United States government. At the end of the school year, about June 1, 1920, the parties returned to the home of plaintiff's parents, where they remained until the latter part of August, when defendant again went to Lincoln to resume his school work. Plaintiff refused at that time to return with him. Since then they have not lived together.

Defendant in his testimony said that very soon after his wife rejoined him at the home of her parents, after his return from France, she received a number of long-distance telephone calls; that he overheard a part of the telephone conversations; that she received a number of letters from the father of the friend whom she had been visiting; that he obtained possession of some of the letters and

Riddick v. Riddick.

read them; that they contained recitals of the meretricious conduct and relations existing between the writer and plaintiff; that he then read the letters to her and charged her with infidelity; that she admitted the truth of the charges and promised, if he would forgive her, not to be again guilty of misconduct. Plaintiff, however, upon the witness-stand denied any misconduct upon her part; denied that she ever received any such telephone calls or letters, and denied the existence of any such letters as testified to by defendant.

There is no evidence in the record, except the testimony of defendant, that plaintiff has been other than a chaste and pure woman. There is evidence which tends to show that plaintiff has always borne a good reputation in the community in which she lives and has lived from the time of her birth, and also that the men, with whom she was charged with being intimate, are of respectable character and standing in their communities. It may also be observed that the testimony of defendant is conflicting in many respects. It is but charitable to say that defendant, suffering from his wounds and disease resulting therefrom, has become morbid and unduly suspicious and jealous. The evidence justifies the finding that charges of infidelity against the wife are untrue and were made without probable cause.

Defendant argues that the charges, even if false, have been condoned by the subsequent cohabitation of the parties, and therefore do not at this time constitute a cause for divorce. The record discloses, however, that the charges have been repeated and reiterated by defendant in his letters since the parties separated. In *McNamara v. McNamara*, 93 Neb. 190, it is held: " Condonation of acts of cruelty by the husband against the wife is conditional upon subsequent good conduct, and cannot constitute a defense in an action for divorce if the husband is guilty of cruelty after the alleged condonation."

Counsel for defendant urges us to follow the holding of this court in *Votaw v. Votaw*, 90 Neb. 699. In that case

the husband had made false charges against his wife. There was some slight provocation for the charges; they were made while he was angry, and very shortly thereafter he retracted his charges and did everything in his power to make amends for his cruel conduct. Under the circumstances in that case, this court approved the finding of the district court denying a divorce. The situation in the instant case is very unlike that in the *Votaw* case. Here the false charges have not been withdrawn, nor has the defendant sought to make amends for them, but, on the contrary, he has reiterated them, and did so even upon the trial.

The evidence indicates that the plaintiff is a proper and fit person to have the custody of the little daughter, and, by the aid of her parents, she can provide for it a suitable home where it will have proper care and training.

We find nothing that would justify disturbing the judgment of the district court. It is therefore

AFFIRMED.

Note—See Divorce, 19 C. J. sec. 204.